[No. B067505. Second Dist., Div. Two. June 24, 1993.]

W. F. HAYWARD CO., Plaintiff and Appellant, v.
TRANSAMERICA INSURANCE COMPANY, Defendant and
Respondent.

**COUNSEL**

Mantalica, Treadwell & Glauber, Mantalica & Treadwell, Mark A. Treadwell and Demetrios Papanikolas for Plaintiff and Appellant.

Bottum & Feliton, William J. Allard, Roswell Bottum and Suzann Papagoda for Defendant and Respondent.

## OPINION

**BOREN, P. J.**—In this case, we hold that a complete work stoppage on a public work of improvement for 30 days constitutes a "cessation" of labor and a "completion" of the project. (Civ. Code, § 3086.)[1] The cessation of labor on or completion of the project commences the period during which stop notices must be filed under California's lien laws. (§ 3184.) Here, a subcontractor's failure to file its complaint within six months of the expiration of the period in which to file stop notices bars this suit against the surety on a contractor's payment bond. (§ 3249.) Accordingly, we affirm the judgment.

### FACTS

Cates Construction, Inc. (Cates), contracted on October 25, 1988, with the County of Los Angeles (County) to construct the Lost Hills sheriff's station. Cates acted as the "original contractor" on the project within the meaning of section 3095. Appellant, W. F. Hayward Co., contracted on November 23, 1988, with Cates to provide certain labor and materials on the project. Appellant was thus a subcontractor as defined in section 3104.[2]

As required by section 3247, Cates obtained a payment bond issued by respondent, Transamerica Insurance Company.[3] Construction on the project commenced but a number of delays ensued. A dispute between Cates and the County arose concerning who should bear the responsibility and expense stemming from the delays. Both Cates and its subcontractors sought additional payments from the County to defray the expenses arising out of the delays.

In a letter dated June 4, 1990, the County advised respondent that Cates had been suspended on the construction contract, effective June 5, 1990, and

---

[1] All further statutory references herein are to the Civil Code of California unless otherwise specified.

[2] Section 3095 provides that an original contractor is the "contractor who has a direct contractual relationship with the owner." Section 3104 provides that a subcontractor is a "contractor who has no direct contractual relationship with the owner."

[3] Subdivision (a) of section 3247 provides, in pertinent part: "Every original contractor to whom is awarded a contract by a public entity . . . involving an expenditure in excess of twenty-five thousand dollars ($25,000) for any public work shall, before entering upon the performance of the work, file a payment bond with and approved by the officer or public entity by whom the contract was awarded."

that the board of supervisors would adopt a formal termination of Cates's contract on June 19, 1990. In a letter dated June 7, 1990, Cates requested that the County approve a change order in the amount of $1,227,771.79, a total which reflected the sum of the claims of Cates and its subcontractors arising out of the delays. The sum included appellant's claim of $243,650. Cates and its subcontractors, including appellant, ceased work on the project. Cates never resumed any construction activity on the project.

On August 3, 1990, Cates and the County entered into an agreement entitled "Termination for Convenience Agreement and Mutual Release," whereby the County relieved Cates of any further obligation or liability regarding the contract to construct the sheriff's station. By this agreement, Cates also purported to assign to the County all of its subcontracts, including the subcontract with appellant.

Appellant, in a letter to the County dated August 15, 1990, proposed that the County and appellant enter into a new contract. However, the County took the position that it had acquired a valid assignment of appellant's contract with Cates and that appellant's proposal was therefore unacceptable. Using the former Cates subcontractors, including appellant, the County completed the construction of the project on March 19, 1991.

On July 17, 1991, appellant filed suit against Cates, the County, and respondent, Cates's surety. Cates was insolvent and its default was entered. This appeal concerns only the claim against respondent, seeking recovery on respondent's payment bond.

After answering appellant's complaint, respondent filed its motion for summary judgment, based on the ground that the lawsuit was untimely filed as to respondent and was barred by section 3249. The trial court granted respondent's motion for summary judgment.

## DISCUSSION

■ On appeal from summary judgment, the reviewing court conducts a de novo examination to determine whether the moving party was entitled to summary judgment as a matter of law or whether there were any genuine issues of material fact. (*Krieger* v. *Nick Alexander Imports, Inc.* (1991) 234 Cal.App.3d 205, 212 [285 Cal.Rptr. 717].) Here, the essential facts are not in dispute; their legal significance is.

The trial court granted the motion for summary judgment on the ground that appellant had not filed its complaint within the time period prescribed

by the applicable statute of limitations. That statute of limitations is set forth in section 3249, which provides: "Suit against the surety or sureties on the payment bond may be brought by any claimant, or his assigns, at any time after the claimant has furnished the last of the labor or materials, or both, but must be commenced before the expiration of six months after the period in which stop notices may be filed as provided in Section 3184."

 Thus, the issue here is whether the complaint was filed within six months after the period in which appellant could file stop notices. ██ ██ The parties' dispute centers on what constitutes the period for filing stop notices.[4]

Section 3184, referenced in section 3249, provides that any stop notice "must be served before the expiration of: [¶] (a) Thirty days after the recording of a notice of completion (sometimes referred to in public works as a notice of acceptance) or notice of cessation, if such notice is recorded. [¶] (b) If no notice of completion or notice of cessation is recorded, 90 days after completion or cessation."[5] With regard to Cates's work on the project, the parties do not dispute that neither a notice of completion nor a notice of cessation was filed or recorded. Subdivision (b) is therefore the applicable portion of section 3184. Application of this provision presents the question: When was there a "completion or cessation"?

Because it provides a definition of "completion," section 3086 comes into play. That section provides: "If the work of improvement is subject to acceptance by any public entity, the completion of such work of improvement shall be deemed to be the date of such acceptance; provided, however, that . . . a cessation of labor on any public work for a continuous period of 30 days shall be a completion thereof."

---

[4]"A stop notice (sometimes called a 'notice to withhold') is a remedy to reach unexpended construction funds in the hands of the owner or lender and is available on both private and public works. [Civ. Code,] § 3103. In effect, it is similar to garnishment of the funds otherwise available to pay the original contractor. *Frederickson* v. *Harney* (1962) 199 [Cal.App.2d] 189, 18 [Cal.Rptr.] 562. . . .

". . . . . . . . . . . . . . . . . . . . . . . . . . . .
"The stop notice does not itself result in payment of the claims; in a sense, the stop notice constitutes a lien on the property (earnings) of the contractor held by the public agency. When the notice is filed, the claimant has a right against those earnings held by the agency. In effect, filing a stop notice imposes a trust obligation on the agency (*United States Fid. & Guar. Co.* v. *Oak Grove Union School Dist.* (1962) 205 [Cal.App.2d] 226, 230, 22 [Cal.Rptr.] 907, 910). . . . [¶] The practical effect of the stop notice is that the public entity withholds funds, otherwise payable to the contractor or those claiming under the contractor ([Civ. Code,] § 3186 . . .), from which the entity will pay the claimant when the claimant has obtained judgment against the contractor and the entity or has made a settlement and received an assignment of the fund from the contractor." (Cal. Mechanics' Liens and Other Remedies (Cont.Ed.Bar 1988) pp. 39, 124.)

[5]In order to sue a surety or to commence the running of the statute of limitations it is not required that a stop notice actually be filed. (§ 3250.)

The record in the instant case makes clear that there was a cessation of labor on the Lost Hills sheriff's station project. However, it does not appear that appellant served any stop notice regarding this public work. (See § 3181 et seq.) Indeed, appellant's position is that there was no cessation of labor because the subsequent performance of appellant was pursuant to the original contract between Cates and the County, which Cates and the County "modified" on August 3, 1990. However, the August 3, 1990, agreement between Cates and the County was certainly not a mere "modification" of the original contract as appellant contends.

Entitled "Termination for Convenience Agreement and Mutual Release," the August 3, 1990, contract specified that "the Primary Contract [between the County and Cates] is hereby terminated and Cates is relieved of any further obligation or liability in connection therewith including, but not limited to, performing any more work on the Project . . . ." The contract then spelled out what payment would be made for the contract work already performed, made an assignment of Cates's subcontracts and accepted all work "currently completed in its current condition," except for certain specified items not relevant here. It also "exonerated and released" Cates's payment bond (subject to certain exceptions not relevant here) and provided payment of the "subcontractor's unpaid invoices for work on the project up to and including June 5, 1990 . . . ." Finally, the agreement contained general releases by both the County and Cates. Thus, while there was an attempt to preserve by way of assignment the contracts between Cates and its subcontractors, the original contract between Cates and the County was terminated.

The Civil Code clearly specifies that "any right of action on any original contractor's . . . public work payment bond" must be based on a claim that "the work forming the basis for his claim was performed by [the claimant] for the principal [e.g., Cates] on such payment bond . . . pursuant to the contract between the original contractor and the owner." (§ 3267.)

■ Hence, we conclude that the specification in section 3249 that suit on the payment bond may be brought "after the claimant has furnished the last of the labor or materials, or both" refers to furnishing labor and materials under the contract "between the original contractor and the owner." (§ 3267.) Any work a subcontractor performs after the original contractor's obligations have ended should not extend the surety's liability, since it is the conduct of the original contractor to which the bond relates. Thus, while the subcontractor may look to the payment bond for satisfaction, the Legislature has seen fit to allow suit against the bond to commence only within six months after the stop notice period has expired.

██ Most important, then, is whether the 90-day stop notice period commenced to run 30 days after the County suspended Cates's contract on June 5, 1990. If there was at that time a 30-day cessation of labor within the meaning of section 3086, then that work stoppage was a "completion" pursuant to sections 3086 and 3184 and commenced the running of the stop notice period.[6]

Nowhere in the trial court record or in its brief on appeal does appellant claim that any actual work occurred between June 5, 1990, and August 3, 1990. In fact, Dennis Hayward, appellant's president, in his declaration in opposition to respondent's motion for summary judgment, admitted that just prior to June 7, 1990, Cates had requested appellant "to suspend work 'without mobilization' " as it was in negotiations with the County about the delay claim. The declaration further admits that appellant "did not demobilize and remained ready to resume performance on short notice." More specific and telling is Dennis Hayward's August 15, 1990, letter to the County stating that appellant's work as a subcontractor "on the above project [Lost Hills sheriff's station] . . . ceased last June. [Appellant's] contract was with Cates Construction, Inc." This letter goes on to indicate that appellant is concerned about resuming any activity on the project because of previous losses incurred relative to the project and expressing a hesitancy to honor Cates's assignment of its contract with appellant. Thus, it is undisputed that no work relative to the contract between Cates and appellant nor on the contract between Cates and the County occurred during the period from June 5, 1990, until at least August 3, 1990.

Since there clearly was a dispute concerning payment for work on the project, and work had ceased, appellant could have served a stop notice on the County in accordance with section 3184. That necessarily would have

---

[6]If the section 3249 statute of limitations is based upon a "completion" as specified in section 3184, subdivision (b) and defined in section 3086 (providing a limitations period beginning on June 5, 1990, when work on the project ceased, and expiring at the latest on April 5, 1991 (30 days + 90 days + 6 months)), and if under the facts of this case the limitations period did expire (as we have determined), then we need not (and do not) address the separate question of whether a shorter limitations period applies, one based on "cessation" as also specified in subdivision (b) of section 3184 (90 days + 6 months). Using "completion" as the starting point of the 90-day stop notice period allows 120 days before the limitations period of section 3249 begins to run, since, per the definition in section 3086, constructive "completion" is not reached until 30 days after work stopped. If "cessation" is the starting point, only 90 days need pass before the section 3249 period begins to run. (See Cal. Mechanics' Liens and Other Remedies, *supra*, at p. 128.) In the latter case appellant was required to file his lawsuit against respondent at the latest on March 6, 1991. We note that there does not appear to be anything in the statutes pertaining to "Works of Improvement" (Title 15 of the Civil Code, section 3082 et. seq.) or in the practice guides relating thereto which suggests that the term used in section 3184, subdivision (b), "cessation," is, or should be, defined any differently than the term used in section 3086, "cessation of labor."

required service, at the latest, within 90 days of July 5, 1990 (i.e., by October 3, 1990). Section 3249's limitations period "of six months after the period in which stop notices may be filed as provided in section 3184" thus expired no later than April 5, 1991. However, the instant lawsuit was not filed until July 17, 1991.

The authorities relied on by appellant to support its position that there was not a "cessation of labor" which set in motion the limitations period for serving a stop notice on the public entity are inapposite. In *Krueger Brothers Builders, Inc.* v. *San Francisco Housing Authority* (1988) 198 Cal.App.3d 1 [243 Cal.Rptr. 585], which, in turn, relies on the second authority, *Southwest Paving Co.* v. *Stone Hills* (1962) 206 Cal.App.2d 548 [24 Cal.Rptr. 48], the contractor (Krueger) disputed a claim and stop notice on the ground that the stop notice was untimely served. Krueger based its untimeliness argument on the premise that because it had "ceased work" at an early date, the 90-day period to file a stop notice was triggered under the "cessation of labor" referred to in section 3086. However, the Court of Appeal noted that Krueger had merely ceased work because it had completed its contracted obligations on the project and ruled that such "[c]ompletion of work on the contract is not the 'cessation of labor' referred to in section 3086 which would trigger the commencement of the 90-day period to file a stop notice." (*Krueger Brothers Builders, Inc., supra,* at p. 7.) Although that case does not specify what is such a "cessation of labor," it does not appear that Krueger ceased work because of any dispute over payment or caused its subcontractor or material men to stop their work either. In contrast, that is precisely what occurred in the instant case, and under these circumstances a 30-day work stoppage does amount to the "completion or cessation" referred to in section 3184 and the "cessation of labor" referred to in section 3086. It is precisely this kind of situation for which the stop notice procedure was designed to allow subcontractors to give notice to owners and contractors of their claims.

The other case relied upon by appellant, and which is cited in *Krueger Brothers Builders, Inc.* is *Southwest Paving Co.* v. *Stone Hills, supra,* 206 Cal.App.2d 548. That case interpreted predecessor statutes to sections 3086 and 3184. In *Southwest Paving,* the plaintiff, a subcontractor, performed work pursuant to a general contract between the defendants (owners of certain land) and the general contractor. This work was "subject to acceptance by the City of Los Angeles" (206 Cal.App.2d at p. 551), and the sole question in the case was whether the subcontractor's time to file a lien was controlled by the provision relating to "cessation of labor" or the provision relating to the date of acceptance by the city. The defendants prevailed in the trial court based on their contention that there had been a cessation of labor

when plaintiff had *completed* its part of the work of improvement. (*Id.* at pp. 551-554.) However, the Court of Appeal found, "Actual completion of a contract is not regarded as the 'cessation of labor' which is referred to in [the statutes]." (*Id.* at p. 554.) Thus, the Court of Appeal found there had been no cessation of labor pursuant to the statutes, and other provisions therefore governed the time for filing claims of lien. (*Id.* at pp. 554-555.)

Again, the instant case provides a contrast since there was in fact "a cessation of labor on . . . [a] public work for a continuous period of 30 days" which constituted "completion" pursuant to the definition in section 3086 and commenced the period for filing stop notices regarding public works pursuant to subdivision (b) of section 3184. Our construction of subdivision (b) of section 3184 is consistent with interpretations placed on this provision by California practice guides, which have described "cessation" as "a complete work stoppage" and as a situation in which "work by all trades has ceased on the project." (McIsaac, Handling Public Works Remedies: Stop Notices and Payment Bonds (Cont. Ed. Bar Action Guide Summer 1991) § 5, pp. 10-12, & App. A, p. 37.)

Also on point is the Supreme Court's decision in *Robison v. Mitchel* (1911) 159 Cal. 581 [114 P. 984], relating to predecessor statutes of sections 3086 and 3184. In its construction of the applicable statutes, the Supreme Court examined the phrase "cessation of labor" and noted that "the dominant idea [of these statutes is] to declare that cessation [of] labor for thirty days upon any unfinished work [is] the equivalent of an actual completion for the purpose of filing claims of lien . . . ." (159 Cal. at p. 589.) The Supreme Court noted that the legislative intent was that any cessation of labor (there, an abandonment by the general contractor) for a period of time was to be deemed "a completion whether the work was being prosecuted under a contract or not." (*Ibid.*) The key point is that actual work stoppage gives a subcontractor both notice of the problem between the contractor and the owner (or public entity) and the right to file a stop notice to obtain protection of its rights. In the instant case, appellant apparently filed no stop notice and then neglected to file suit against the surety within the time provided by section 3249. Any work which appellant subsequently performed on the project could not have been pursuant to the "contract between the original contractor and the owner [the County]" since that contract was terminated on August 3, 1990. (See § 3267.)

■ Appellant also contends that in granting the motion for summary judgment the trial court failed to comply with subdivision (g) of section 437c of the Code of Civil Procedure, which requires that such an order "specify the reasons for its determination." However, the court's minute order specifically stated, ". . . plaintiff failed to file his claim against the surety

within six (6) months of the time the stop action could have been filed, as required by Civil Code 3249." Also, the judgment of the court stated, "Plaintiff failed to file suit on its claim against the payment bond of Transamerica Insurance Company within six (6) months, after the time stop notices could have been filed, as required by Civil Code Sections 3249 and 3184." The minute order also provided that the "[m]otion is granted on grounds set forth in the moving papers, including defendant's separate statement of undisputed material facts." For purposes of meaningful appellate review (a key objective of subdivision (g) of section 437c), the court's statement of reasons is quite adequate. Certainly, there is no question about the reason this motion for summary judgment was granted.

In view of our conclusion that appellant's action against Transamerica was not timely filed, we need not address appellant's additional arguments regarding exoneration of the surety payment bond under section 3225 and regarding the significance of section 3250, which states that filing a stop notice is not required to enforce a claim on the payment bond.

### DISPOSITION

The judgment is affirmed.

Gates, J., and Fukuto, J., concurred.

Appellant's petition for review by the Supreme Court was denied October 14, 1993. Mosk, J., was of the opinion that the petition should be granted.