Filed 6/10/13  Burns v. WD-40 Co. CA4/3

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FOURTH APPELLATE DISTRICT

DIVISION THREE

|  |  |
|---|---|
| ANDREA BURNS, | |
| Plaintiff and Appellant, | G047027 |
| v. | (Super. Ct. No. 30-2010-00382503) |
| WD-40 COMPANY, | O P I N I O N |
| Defendant and Respondent. | |

Appeal from a judgment of the Superior Court of Orange County, Kim Garlin Dunning, Judge.  Affirmed.

Blood Hurst & O'Reardon, Timothy G. Blood, Leslie E. Hurst and Paula M. Roach for Plaintiff and Appellant.

Law Office of Shannon Sweeney, Shannon Sweeney; Lewis Brisbois Bisgaard & Smith, Jon P. Kardassakis and Ivan L. Tjoe for Defendant and Respondent.

\*          \*          \*

Plaintiff Andrea Burns sued defendant WD-40 Company (WD-40) because their products, 2000 Flushes and 2000 Flushes Blue Plus Bleach (2000 Flushes Blue), allegedly harmed her plumbing. The putative class action sought relief under both statutory and common law causes of action and for injunctive relief. WD-40 filed a motion to dismiss her claim under the Consumer Legal Remedies Act (CLRA) and for summary judgment on the remaining counts, arguing, among other things, a lack of evidence as to causation with respect to the falsity of the advertising. The trial court granted the motion. Burns had two routes to establish the falsity of the representations — that her plumbing was harmed, or that nearly all plumbing would be harmed by use of the products. Because WD-40 successfully shifted the burden on these issues, and Burns failed to raise a triable issue of material fact in rebuttal, we affirm.

I

FACTS

WD-40 currently manufactures and sells 2000 Flushes and 2000 Flushes Blue (collectively the products). The original versions of the products were created by Block Drug Company during the 1990's. At the time, the products were plastic canisters that were placed in the toilet bowl. The active ingredient was calcium hypochlorite bleach.

In 2001, WD-40 acquired the products. It discontinued the canister version of the products and began to sell a fully dissolvable tablet form. The active ingredient was dichlorohydantoin, a slower dissolving, less reactive chlorine source. 2000 Flushes Blue also included a second tablet which included blue dye. During the middle of the putative class period, the products' formulation changed, reducing the amount of chlorine used.

Burns initiated the instant case in 2010, and filed a first amended complaint (the complaint) in November 2011. The gravamen of the complaint was that the products

2

falsely represented that they did not harm plumbing. Burns sought to define the class as all consumers in the United States who had bought the products during the applicable statute of limitations period, excluding anyone who had a legal relationship to WD-40. Burns brought causes of action under the CLRA (Civ. Code, § 1750 et seq.), the unfair competition law (Bus. & Prof. Code, § 17200 et seq.) (the UCL), for express warranty and for unjust enrichment. She also sought injunctive and declaratory relief.

Burns's claims were based on her allegations that "the Products contain highly corrosive chemicals that, upon contact, attack plastic, rubber, and metal toilet tank components causing them to disintegrate, warp, swell, and blister, materially shortening the life span of these parts." In support of these assertions, Burns cited to reports produced by the Metropolitan Water District (MWD) in 1998 and 2000, stating these reports concluded the products caused damage to toilet components and caused them to leak.

Burns further alleged she "purchased and used the Products believing they were reasonably safe as represented on the Product package" but "suffered injury in fact and lost money and property as a result of Defendant's wrongful conduct. She lost money as a result of the wrongful conduct because she paid for the falsely advertised Products."

In December 2011, WD-40 filed a motion to dismiss the CLRA claim and on January 10, 2012, it filed a motion for summary judgment or adjudication on the remaining causes of action.[1] Both motions were based on similar arguments and identical evidence, and WD-40 filed separate statements of fact that were nearly identical. The basis of the motions was WD-40's argument that Burns had no admissible evidence

---

[1] Burns also filed a motion for class certification, which was calendared for the same hearing date. The motion was ultimately taken off calendar without a ruling.

of damage caused by the products. WD-40 also argued the express warranty cause of action was barred by the statute of limitations.

WD-40 submitted evidence in the form of deposition testimony, discovery responses, and the declaration of WD-40's vice-president of research and development, Ernest Bernaducci, Ph.D. The deposition of Burns and her husband, Edward,[2] as well as other discovery responses, established that they lived in their San Clemente home from 1995 or 1996 to 2003, and again from May 2006 to July 2007. Between 1996 and 2000, the house was remodeled, including the three bathrooms. Edward replaced two toilets and replaced the inner mechanism of a third during the remodel. Burns purchased 2000 Flushes five or six times between May 2006 and July 2007 for use in her home in San Clemente. She never purchased 2000 Flushes Blue.

While she was using the product in 2006 and 2007, Burns did not replace any toilet tank components or notice any problems. In June or July 2007, they moved to a new house and discontinued use of the product. Tenants moved into the San Clemente house, and Burns had no knowledge about how the tenants cleaned the toilets. Sometime during the tenants' occupancy, two toilets in the San Clemente house began to run. Edward replaced the toilet flappers and other components, which at that point were between seven and 12 years old. He threw away the old flappers and did nothing to determine what might have caused them to fail. Burns had no information on these points either, and she never personally saw any part of a toilet tank that was damaged. Edward never told her that he saw a part in the toilet tank that was disintegrated, warped, swollen or blistered.

In 2010, Burns learned from an attorney friend that 2000 Flushes could cause "long-term damage[] to the bottom of the toilet." She therefore came to believe

---

[2] We refer to Edward Burns by his first name to avoid confusion. No disrespect is intended.

that the chlorine in 2000 Flushes could have contributed to the running toilet her tenants experienced in 2007 or 2008.

WD-40 also submitted evidence regarding flapper valves in general, particularly their allegedly limited lifespan. One of the MWD reports on which Burns relied stated that flappers "may fail within 5 years, due either to normal 'wear and tear' or to other factors introduced by the consumer." WD-40's expert, Bernaducci, testified that to learn the cause of a flapper's failure, it would be important to know what materials were used to construct it, its design, and the conditions under which it was used.

With respect to the conclusions of the MWD reports, Bernaducci testified that those studies, published in 1998 and 2000, were based on the formulation of the products sold at that time. Neither of the studies was based on the products sold in 2006 or 2007. Further, WD-40's own testing on the current products had not demonstrated any harm to toilet tank surfaces.

In opposition, Burns submitted evidence that WD-40 had not done testing or studies to demonstrate that the products were safe for plumbing. She introduced the declaration of Edward Kresge, a Ph.D., in chemisty who had been involved with the MWD studies. He stated that all of the chlorinated cleaners studied at the time damaged the flappers, and those test results could be applied here regardless of the change in formulation. Kresge disagreed that all flappers would eventually fail in an environment free of outside chemicals.

Burns also introduced evidence of consumer complaints to WD-40 about the products, which included evidence that WD-40 often settled such claims, marketing materials, and other evidence, but no additional evidence related to Burns's particular situation.

The court tentatively decided to grant the motions, providing the following modified tentative ruling: "1st cause of action (CLRA): Although complaint alleges

plaintiff purchased two of defendant's products, discovery has established she purchased only one. No evidence that defendant's product caused any damage to plaintiff — toilet flapper was not preserved and toilet was not under plaintiff's 'control' for approx. 2 years before repair was performed as plaintiff was renting out her home. Plaintiffs expert's opinions are based on a long-discontinued formula for product and do not create triable issues of fact. [¶] 2d—5th causes of action: No triable issue of fact concerning injury and loss of money or property. This is not a case of competing expert declarations. Opinions by plaintiff's expert (Kresge) based on conjecture and do not raise triable issues of material facts; expert opines as to possibilities, not likelihood." The parties appeared for the hearing but apparently submitted on the tentative. The tentative ruling became the final order, and judgment was subsequently entered.

## II

## DISCUSSION

### A. *Standard of Review*

Summary judgment "provide[s] courts with a mechanism to cut through the parties' pleadings in order to determine whether, despite their allegations, trial is in fact necessary to resolve their dispute." (*Aguilar v. Atlantic Richfield Co.* (2001) 25 Cal.4th 826, 844.) The trial court properly grants a motion for summary judgment if all the papers submitted establish there is no triable issue of material fact and the moving party is entitled to judgment as a matter of law. (Code Civ. Proc., § 437c, subd. (c); *id.* at p. 843.)

"Although a CLRA cause of action cannot be summarily disposed of by means of a motion for summary adjudication or summary judgment (Civ. Code, § 1781, subd. (c)), it can be dismissed before trial on a motion for a determination that it is without merit (i.e., a no-merit determination). [Citations.] In practice, courts nevertheless have applied the standards applicable to motions for summary judgment and

6

summary adjudication in deciding motions for no-merit determinations.  [Citations.]  One court commented that it could 'see no meaningful distinction in the choice' between dismissal of a cause of action after a motion for summary judgment and a motion for a no-merit determination.  [Citation.]" (*Smith v. Wells Fargo Bank, N.A.* (2005) 135 Cal.App.4th 1463, 1474-1475.)  Thus, we apply the same standard to the CLRA cause of action as to Burns's other claims.

"[T]he party moving for summary judgment bears an initial burden of production to make a prima facie showing of the nonexistence of any triable issue of material fact; if he carries his burden of production, he causes a shift, and the opposing party is then subjected to a burden of production of his own to make a prima facie showing of the existence of a triable issue of material fact." (*Aguilar v. Atlantic Richfield Co.*, *supra*, 25 Cal.4th at p. 850.)  "A prima facie showing is one that is sufficient to support the position of the party in question." (*Id.* at p. 851.)  "There is a triable issue of material fact if, and only if, the evidence would allow a reasonable trier of fact to find the underlying fact in favor of the party opposing the motion in accordance with the applicable standard of proof.  [Fn. omitted.]" (*Id.* at p. 850.)

We review the trial court's decision de novo, considering all evidence the parties offered in connection with the motion and the uncontradicted inferences the evidence reasonably supports.  (*Herberg v. California Institute of the Arts* (2002) 101 Cal.App.4th 142, 148.)

B.  *The Adequacy of the Trial Court's Order*

Code of Civil Procedure section 437c, subdivision (g), requires the trial court to specify the reasons for its decision to grant summary judgment in an order that "specifically refer[s] to the evidence proffered in support of, and if applicable in opposition to, the motion which indicates that no triable issue exists."  The trial court's

failure provide an adequate order, however, does not automatically require a reversal. (*Ruoff v. Harbor Creek Community Assn.* (1992) 10 Cal.App.4th 1624, 1627.)  The de novo standard for appellate review of an order granting summary judgment frequently means the lack of a proper order constitutes harmless error.  (*Soto v. State of California* (1997) 56 Cal.App.4th 196, 199 ["[t]he lack of a statement of reasons presents no harm where . . . independent review establishes the validity of the judgment."].)

In *Santa Barbara Pistachio Ranch v. Chowchilla Water Dist.* (2001) 88 Cal.App.4th 439, 449, the court explained when noncompliance with Code of Civil Procedure section 437c, subdivision (g), cannot be considered harmless error if the issues are complex and the evidence conflicting and the trial court has "clearly decided credibility issues, at least through its apparent decision to disregard certain contradictions in the evidence."  De novo review is inappropriate because in such a case because "[w]ithout a sufficient statement of reasons from the court, we are precluded from undertaking a meaningful review of the issues."  (*Ibid.*; s*ee Byars v. SCME Mortgage Bankers, Inc.* (2003) 109 Cal.App.4th 1134, 1146.)

The court's order here was adequate.  It specifically stated the key factor on which summary judgment was based as to the 2000 Flushes product — a lack of evidence of causation and damage, which was not rebutted by expert testimony.  To the extent the court also mentioned that Burns did not purchase 2000 Flushes Blue, this either demonstrates a lack of standing on her part to bring any claims regarding that product, or a lack of proximately caused damage, but in either event, the result is the same.  This is not the kind of case that turned on the credibility of testimony.

In *W. F. Hayward Co. v. Transamerica Ins. Co.* (1993) 16 Cal.App.4th 1101, a case Burns cites on this point, the trial court's order stated:  "'Plaintiff failed to file suit on its claim against the payment bond of Transamerica Insurance Company within six (6) months, after the time stop notices could have been filed, as required by

8

Civil Code Sections 3249 and 3184.' The minute order also provided that the '[m]otion is granted on grounds set forth in the moving papers, including defendant's separate statement of undisputed material facts.'" (*Id.* at p. 1111.) The court held that "the court's statement of reasons is quite adequate" because "there is no question about the reason this motion for summary judgment was granted." (*Ibid.*) The same is true here, and we therefore find the court's order adequate.[3]

## C. WD-40's Burden of Production

The moving party bears the initial burden of production to make a prima facie case demonstrating no material issues of triable fact exist. (*Aguilar v. Atlantic Richfield Co.*, *supra*, 25 Cal.4th at p. 850.) "[H]ow the parties moving for, and opposing, summary judgment may each carry their burden of persuasion and/or production depends on *which* would bear *what* burden of proof at trial." (*Id.* at p. 851.) When the burden of proof at trial would be the civil standard, preponderance of the evidence, "if a defendant moves for summary judgment . . . he must present evidence that would require a reasonable trier of fact *not* to find any underlying material fact more likely than not . . . ." (*Ibid.*, fn. omitted.)

WD-40's primary argument in favor of summary judgment, which it repeats here, is that Burns produced no evidence of damage proximately caused by its product. Proximately caused damage is a required element of each of her causes of action. Suffering "any damage" is a specific requirement under the CLRA. (Civ. Code., §§ 1780, subd. (a), 1781, subd. (a); see also *Tucker v. Pacific Bell Mobile Services* (2012)

---

[3] WD-40 argues that Burns has waived any argument about the adequacy of the order, which was originally a tentative order submitted upon by the parties, without oral argument or any subsequent request for clarification. We quite agree that this is the type of issue that should be raised with the trial court before being raised on appeal. (See *Newton v. Clemons* (2003) 110 Cal.App.4th 1, 11.) Because the trial court's order was adequate, however, we need not consider this argument further.

208 Cal.App.4th 201, 221-222; *Davis-Miller v. Automobile Club of Southern California* (2011) 201 Cal.App.4th 106, 122.) "[I]njury in fact and . . . lost money or property as a result of" the violation is also required under the UCL. (*In re Tobacco II Cases* (2009) 46 Cal.4th 298, 314.) A "breach of . . .warranty which proximately causes plaintiff injury" is required to state a claim for breach of warranty. (*Williams v. Beechnut Nutrition Corp.* (1986) 185 Cal.App.3d 135, 142.) Unjust enrichment is synonymous with restitution (*Melchior v. New Line Productions, Inc.* (2003) 106 Cal.App.4th 779, 793) and is not a cognizable cause of action in the absence of damage caused by the allegedly wrongful behavior.[4] Finally, an injunction is a remedy, not a cause of action in itself. A viable cause of action must exist before a court can grant injunctive relief. (*Camp v. Board of Supervisors* (1981) 123 Cal.App.3d 334, 356.)

Thus, to sustain any cause of action in her complaint, she had two possible routes. First, Burns could establish that she had personally suffered damage to her plumbing because of her use of the products, thus raising the inference that the representations were false. Second, she could produce evidence that the products caused such universal, almost unfailing damage, that an inference of falsity of the "safe for plumbing" statement must surely follow.

WD-40 produced evidence to show that Burns could not demonstrate such damage under either theory. With respect to 2000 Flushes Blue, it relies on her admission that she never purchased or used it.[5] With respect to 2000 Flushes, she used

---

[4] Burns did not plead a separate cause of action for declaratory relief, but included the request in the final sentence of her unjust enrichment claim. It was therefore improperly pled, and there is nothing to indicate that declaratory relief is appropriate in this case in any event. Burns offers no separate argument as to why summary judgment was inappropriate as to that request, and any such argument is therefore waived. (*Benach v. County of Los Angeles* (2007) 149 Cal.App.4th 836, 852.)

[5] Because of an admitted lack of causation as to 2000 Flushes Blue, we need not consider any other argument with respect to this product.

the product five or six times over a period of approximately 14 months, during which she experienced no plumbing problems. Burns and her husband then moved out of the house. During her tenants' occupancy, sometime in 2007 or 2008, two of the three toilets in the house began to run, and Edward replaced the toilet flappers and components. Burns had no knowledge regarding how the tenants cleaned the toilets. The parts were not preserved or photographed, and Edward did nothing to determine what might have caused the failure.

In sum, Burns stopped using the products months before any plumbing problem arose, she did not have control over the toilets at the time of the problems, she can offer no facts regarding how the toilets were cleaned or with what products after she left, and no actual cause of the flapper failure was ever determined. Without more, these facts are insufficient to establish harm proximately caused by the products, and therefore harm caused by the alleged false advertising. Given the lapse in time, Burns's lack of control over the toilets once she moved out, and the failure to preserve the damaged flappers, no reasonable trier of fact could conclude the products caused the plumbing damages, raising the inference that the advertising was actually false.

We thus turn to the second possible theory, that the products caused such widespread and nearly unfailing harm that the representations of safety were surely false. WD-40's evidence addressed the 1998 and 2000 MWD reports, which Burns had relied on heavily in her complaint. Bernaducci's declaration explained that those studies were based on a different formula as well as a different delivery system (canister as opposed to tablet). The current product used a different active ingredient which was slower to dissolve and less reactive than the product the MWD tested. The current products were continually tested in "flush labs" to test the products performance and safety. In the 16 years he had been supervising the flash labs, Bernaducci had "never seen, or been made aware of, any harm to any of the surfaces in the toilet tanks." Further, he testified the

11

products were designed to avoid the type of harm at issue in this lawsuit. Given these facts, WD-40 met its burden by producing evidence that demonstrates Burns cannot establish a prima facie case on any of her causes of action.

*D. Burns's Burden of Production*

Because WD-40 met its burden of production, the burden then shifts to Burns to demonstrate the existence of a triable issue of material fact. (*Aguilar v. Atlantic Richfield Co.*, *supra*, 25 Cal.4th at p. 850.) Thus, Burns was required to produce admissible evidence demonstrating proximately caused harm. On either the personal harm or universal harm theory, she has not come anywhere close to doing so. She submitted no evidence of import regarding personal harm — her "belief" that 2000 Flushes caused her toilets to run is speculation, not evidence.

With respect to the notion that the products necessarily damage all plumbing, Kresge's expert testimony was largely premised on the studies done on the much earlier versions of the products. Although he testified the results were applicable regardless of the change of formula, the trial court properly found this was conjecture and raised only possibilities, not likelihood. Kresge had done no testing or research on the version of the product Burns actually used, and only testified that the chlorine in the product "can cause significant changes in physical properties of the flapper. . . . The attack usually begins on the surface and progresses toward the interior." We must agree with the trial court that this opinion was insufficient to raise a triable issue. Kresge's language such as "can cause" and "usually begins" with respect to the current formulation were not enough to establish proximate cause. Therefore, the evidence that she points to from the 1998 and 2000 MWD reports was indisputably based on an earlier formulation of the products, and failed to prove anything relevant here.

12

The additional evidence submitted by Burns, including consumer complaints, is also insufficient to established per se damage by the products. If the products caused damage to every toilet, WD-40 would assuredly have received more than the 43 complaints Burns points to in 2008. Evidence regarding marketing, WD-40's knowledge about the product, and other factors is simply not helpful to Burns in the absence of evidence the representations were false.

We also reject Burns's argument that the declaration of Dr. Maureen Reitman, submitted in opposition to the class certification motion, somehow proves that the products (and indeed, all similar products containing any amount of chlorine) invariably cause damage to plumbing. Burns argues: "WD-40 does not dispute (indeed, its expert Dr. Maureen Reitman testified) that the rubber and plastic in the toilet tank 'will be affected by chlorinating agents[.]'" Burns does not mention this statement is taken out of context. Reitman's declaration actually states: "The majority of polymer and elastomer compounds, including those used in flappers, will be affected by chlorinating agents, but not all these changes will lead to failure. . . . Any of these effects may indicate degradation which can, but won't necessarily, lead to premature failure." Thus, we reject Burns's implication that WD-40 acknowledged that chlorine will nearly invariably harm plumbing.

As discussed above, the evidence relevant to Burns does not establish a triable issue of fact that the products caused damage to her toilets. She has only her belief, established years later, that the chlorine in 2000 Flushes could have contributed to the running toilets her tenants experienced in 2006 or 2007. This amounts to supposition rather than evidence, and is simply insufficient to establish a triable issue of material fact. Thus, the trial court properly granted summary judgment.

13

### III

### DISPOSITION

The judgment is affirmed.  WD-40 is entitled to its costs on appeal.


MOORE, J.

WE CONCUR:


O'LEARY, P. J.


RYLAARSDAM, J.