Filed 5/21/25

**CERTIFIED FOR PARTIAL PUBLICATION\***

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION SIX

| | |
|---|---|
| TARLTON & SONS, INC.,<br><br>Plaintiff and Appellant,<br><br>v.<br><br>GREAT AMERICAN INSURANCE COMPANY,<br><br>Defendant and Respondent. | 2d Civ. No. B336550<br>(Super. Ct. No.<br>2023CUBC007933)<br>(Ventura County) |

   Appellant Tarlton & Sons, Inc. (Tarlton) appeals a judgment of dismissal after the trial court sustained a demurrer to its third amended complaint without leave to amend. Tarlton contends its claim on a public works payment bond (Civ. Code,[1] § 9550 et seq.) is not barred by the statute of limitations. It also contends the third amended complaint alleges facts sufficient to

---

   \* Pursuant to California Rules of Court, rules 8.1100 and 8.1110, this opinion is certified for partial publication. The portions of this opinion to be deleted from publication are identified as those portions between double brackets, e.g., [[/]].

   [1] Unspecified statutory references are to the Civil Code.

state causes of action for false promise, promissory estoppel, fraud, and negligent misrepresentation. We agree the trial court should have overruled the demurrer as to the payment bond cause of action. We will reverse judgment as to that claim but otherwise affirm.

FACTUAL AND PROCEDURAL BACKGROUND[2]

Oxnard Union High School District (District) awarded Fast Track Construction Corporation (Fast Track) a prime contract to perform heating and air conditioning work at two high schools. Fast Track obtained the required public works payment bond from respondent Great American Insurance Company (GAIC). Fast Track entered into a subcontract with appellant Tarlton to perform framing and drywall work in connection with the project. Tarlton began working on the project in April 2021.

A dispute arose between Fast Track and the District in August of 2021. Tarlton continued working on the subcontract until November 12, 2021.[3] Around this time, the District hired Viola Inc. to "perform general contractor duties." Tarlton entered into a separate subcontract with Viola on November 29, 2021 that modified the scope of its work at the high schools. Tarlton was not "provided formal notice of Fast-Track's termination by the

---

[2] We source all facts from the third amended complaint.

[3] The third amended complaint deleted the allegation that Tarlton stopped work under its Fast Track contract on November 12, 2021 and instead alleged Tarlton continued to perform work "on the Project at the direction of the general contractor" (except a stoppage between August 31, 2021 and September 22, 2021) "through the date of filing of this amended complaint." Tarlton maintains the date after which it could file an action on the bond under section 9558, i.e. when it "ceased providing work under [the] Fast Track" contract, was November 12, 2021.

District, if it was terminated, or shown any agreement related to either the termination of Fast-Track or the District's contract with Viola." Work on the project then continued. For unknown reasons, the District continued to issue change orders to Fast Track "through and including, at a minimum, January 31, 2022."

Tarlton submitted a payment bond claim to GAIC in April of 2022 for work performed under the Fast Track subcontract. It initially sought $596,677.46 but later increased the amount to $688,353.66. GAIC notified Tarlton that it was only partially accepting the claim. GAIC requested Tarlton sign a waiver and release with respect to the amount of the accepted part of the claim. GAIC acknowledged Tarlton's right "to pursue the balance of the amount of its claim." Tarlton sued GAIC, the District, Fast Track, and others in April of 2023 when negotiations over Tarlton's payments failed.

The trial court sustained a demurrer to Tarlton's second amended complaint with leave to amend in November of 2023. Tarlton filed a third amended complaint alleging the following causes of action against GAIC: amounts owed on payment bond (third cause of action); false promise (fifth cause of action); promissory estoppel (sixth cause of action); fraud (seventh cause of action); and negligent misrepresentation (eighth cause of action). The trial court sustained GAIC's demurrer to the third amended complaint—this time without leave to amend. It relied in part on the prior demurrer ruling. It entered judgment on April 4, 2024 and dismissed all claims against GAIC.

## DISCUSSION

### Standard of Review

"In reviewing an order sustaining a demurrer, we examine the operative complaint de novo to determine whether it alleges facts sufficient to state a cause of action under any legal theory."

3

(*T.H. v. Novartis Pharmaceuticals Corp.* (2017) 4 Cal.5th 145, 162.) "'We treat the demurrer as admitting all material facts properly pleaded, but not contentions, deductions or conclusions of fact or law. [Citation.] We also consider matters which may be judicially noticed.' [Citation.] Further, we give the complaint a reasonable interpretation, reading it as a whole and its parts in their context." (*Blank v. Kirwan* (1985) 39 Cal.3d 311, 318.)

*Applicable Law*

The rights of a public works project contractor "with respect to any fund for payment of construction costs" are governed exclusively by the Civil Code. (§ 9350.) A direct contractor (also called the general or prime contractor) on public works project "involving an expenditure in excess of . . . $25,000" must give a payment bond to the public entity before starting work. (§ 9550, subd. (a).) The bond assures that funds will be available to pay subcontractors working on the project if the subcontractor is not paid under its contract. (§ 9554, subd. (b).) A subcontractor can file an action on the bond if not paid for work performed on the project. (§ 9100, subd. (a)(1).) Before doing so, it may notify the direct contractor of the unpaid amounts by serving a stop payment notice on the direct contractor. (§ 9564, subd. (a); see *National Technical Systems v. Commercial Contractors, Inc.* (2001) 89 Cal.App.4th 1000, 1006 [stop payment notice "is a remedy to reach unexpended construction funds in the hands of the owner or lender . . . and may be served by a claimant other than an original contractor"].)

"A claimant may commence an action to enforce the liability on the bond at any time after the claimant ceases to provide work, but not later than six months after the period in which a stop payment notice may be given under Section 9356." (§ 9558.) A stop payment notice is not effective unless, as

4

relevant here, given "90 days after cessation or completion." (§ 9356, subd. (b).)[4] "[C]ompletion of a work of improvement" occurs at the earlier of acceptance of the work by the public entity or "[c]essation of labor on the work of improvement for a continuous period of 60 days." (§ 9200, subd. (b).)

*Payment Bond Cause of Action*

The trial court sustained GAIC's demurrer when it found "completion" occurred 60 days after Tarlton stopped work for Fast Track, i.e., on November 12, 2021. Tarlton contends work continued on the District's project despite any formal termination of the Fast Track contract. This meant no "cessation of labor" occurred that would have triggered Tarlton's period to file a stop notice on that date. Alternatively, it contends GAIC's misleading conduct either estops the surety from relying on the statute or tolls the limitations period. We agree no cessation of labor occurred and reverse the order sustaining the demurrer on Tarlton's payment bond claim. We need not reach the alternative contention.

The trial court cited *W. F. Hayward Co. v. Transamerica Ins. Co.* (1993) 16 Cal.App.4th 1101 (*Hayward*) in support of its ruling. In *Hayward*, Cates Construction, Inc. contracted with the County of Los Angeles to construct a sheriff's station. Hayward was a subcontractor. The County notified Hayward on June 4, 1990 that it had suspended its contract with Cates. All work on the project stopped. Cates and the County agreed to terminate

_____

[4] Section 9356 provides two ways to determine when a stop notice must be given. Under subdivision (a) it can be given within 30 days after a notice of completion, acceptance or cessation is recorded. (§ 9356, subd. (a).) If no such notice is recorded then subdivision (b) applies. There was no recorded notice in this case.

5

their contract on August 3 and to assign the subcontracts to the County.  Work resumed.  Hayward and the other subcontractors performed their assigned subcontracts.  Hayward sued Cates' surety in July of 1991 to recover amounts owed for work performed before Cates' suspension.  (*Id.*, at pp. 1104-1105.)  The trial court found Hayward's claim time barred and granted summary judgment in favor of the surety.

The Court of Appeal affirmed, noting the parties agreed work ceased on the contract between June 5, 1990 and August 3, 1990, and that when work resumed, it was not performed under the original bonded contract.  This meant the cessation of labor occurred on June 5 and triggered the period to file a stop notice.  Hayward's failure to file its complaint within six months of the expiration of the stop notice period meant its claim was time-barred.  (*Hayward*, *supra*, 16 Cal.App.4th at pp. 1108-1109.)

*Hayward* did not discuss whether a "cessation of labor" refers to the bond claimant's work or some other work on the bonded contract.  It did not have to.  The parties in that case, unlike here, agreed on the date when all work ceased.  *Hayward* held a "cessation of labor" occurred under former section 3184, subdivision (b) (the predecessor of section 9356, subd. (b)) when Cates stopped all work on the project.  Constructing the term in this way was "consistent with interpretations placed on this provision by California practice guides, which have described 'cessation' as 'a complete work stoppage' and as a situation in which 'work by all trades has ceased on the project.'  (McIsaac, Handling Public Works Remedies:  Stop Notices and Payment Bonds (Cont.Ed.Bar Action Guide Summer 1991) § 5, pp. 10-12, & App. A, p. 37.)"  (*Hayward*, *supra*, 16 Cal.App.4th at p. 1110.)

The Court of Appeal rejected Hayward's claim that its continued work on the project after June 5th meant there was no

"cessation of labor." The court did not focus on whether *any work* continued, but, rather, on whether Cates continued to perform work *under the bonded contract*. "Most important, then, is whether the 90-day stop notice period commenced to run 30 days after the County suspended Cates' contract on June 5, 1990. If there was at that time a 30-day cessation of labor within the meaning of section 3086 [now section 9200], then that work stoppage was a 'completion' pursuant to sections 3086 and 3184 [now section 9356] and commenced the running of the stop notice period." (*Hayward*, *supra*, 16 Cal.App.4th at p. 1108.) The court added: "Any work a subcontractor performs *after the original contractor's obligations have ended* should not extend the surety's liability, since it is the *conduct of the original contractor* to which the bond relates." (*Id.*, at p. 1107, italics added.)

In summary, *Hayward* concluded a "cessation of labor" or "completion" occurs when work *actually stops*—not when the claimant ceases work on the bonded contract (i.e., the date when an action on the bond could commence under section 9558). (See *Hayward*, *supra*, 16 Cal.App.4th at p. 1110, citing *Robison v. Mitchel* (1911) 159 Cal. 581 ["The key point is that actual work stoppage gives a subcontractor both notice of the problem between the contractor and the owner (or public entity) and the right to file a stop notice to obtain protection of its rights"].)

We also note that the alternative method for triggering the stop notice period is recordation of a notice, including a notice of cessation. (§ 9356, subd. (a).) A recorded notice, like an actual work stoppage, would notify the subcontractor of a problem and its right to file a stop notice.

GAIC apparently agrees that an actual work stoppage under the bonded contract is required for there to be a "cessation of labor." It argues that a cessation of labor occurred when the

District formally terminated Fast Track.[5]  The third amended complaint alleges that no cessation of labor on the project has occurred or "at least it is unknown without further investigation" if a statutory cessation of labor has occurred.  It alleges facts that would suggest Fast Track and perhaps other Fast Track subcontractors continued to work under the bonded contract at least until January 31, 2022, "or at least it is unknown without further investigation when or if any cessation occurred that would trigger the statute."

We conclude that whether a "cessation of labor" occurred here, and if so, when it occurred, is a question of fact that cannot be resolved on demurrer.  The time when Fast Track's work, including its subcontractors' work, under the bonded contract ceased drives the determination of the last day to file a stop notice and the last day to file an action on the bond. [6]

[[*Remaining Causes of Action*

Tarlton also appeals the trial court's sustaining GAIC's demurrer to the fifth cause of action for false promise, sixth cause of action for promissory estoppel, seventh cause of action for fraud, and eighth cause of action for negligent misrepresentation. These claims rely upon an alleged promise that GAIC would pay the undisputed portion of Tarlton's bond claim and that it would "work with [Tarlton] to resolve the remainder of the bond Claim amount without the need to resort to litigation."

---

[5] GAIC contends this occurred on April 7, 2022.  The third amended complaint contains no such allegation.

[6] Because we reverse and remand on this basis we have no need to address whether equitable estoppel or tolling operate to extend the limitations period.

8

False promise, or promissory fraud, requires "a promise made regarding a material fact without any intention of performing it" and "reasonable reliance by the promisee." (*Behnke v. State Farm General Ins. Co.* (2011) 196 Cal.App.4th 1443, 1453.) Fraud and negligent misrepresentation also require misrepresentation and justifiable reliance. (*Small v. Fritz Companies, Inc.* (2003) 30 Cal.4th 167, 173.) A plaintiff must allege both with particularity. (*Id.* at p. 184.) Similarly, promissory estoppel requires a clear and unambiguous promise and reasonable reliance. (*Jones v. Wachovia Bank* (2014) 230 Cal.App.4th 935, 945.)

Tarlton alleges GAIC's written response to the claim expressed its intent to pay the undisputed charges, conditioned on Tarlton signing an enclosed release and assignment. GAIC's letter is quoted in the third amended complaint and attached as an exhibit. It states, "Upon receipt, I will issue payment to Tarlton for the same." Tarlton does not allege it signed this release and assignment or that GAIC promised it would pay the undisputed amount if it did not sign. These allegations are insufficient to support Tarlton's causes of action for false promise, promissory estoppel, fraud and negligent misrepresentation.

Tarlton also alleges it delayed filing this action because it relied on GAIC's "express representations" that it "preferred to resolve the [c]laim . . . short of litigation and amicably through direct negotiations and payment." Stating a general preference to negotiate rather than litigate is likewise not a promise or misrepresentation sufficient to plead these claims. Further, the third amended complaint contains no facts supporting Tarlton's allegations that it reasonably or justifiably relied upon GAIC's representations.

Lastly, Tarlton contends it should be given leave to amend the third amended complaint "to allege it satisfied the condition precedent of executing the release." The trial court gave Tarlton the opportunity to cure this defect when it granted leave to amend the second amended complaint. It did not do so. We agree no further leave is warranted.]]

## DISPOSITION

Judgment is reversed. Upon remand, the trial court is directed: (1) to vacate its order granting GAIC's demurrer to the third cause of action in the third amended complaint; and (2) to enter a new order overruling the demurrer to the third cause of action in the third amended complaint. In all other respects the order sustaining the demurrer is affirmed. Plaintiff shall recover its costs on appeal.

<u>CERTIFIED FOR PARTIAL PUBLICATION.</u>

CODY, J.

We concur:

YEGAN, Acting P. J.

BALTODANO, J.

10

Mark S. Borrell, Judge
Superior Court County of Ventura
_____


Quall Cardot, John M. Cardot and Mary E. Krugh, for Plaintiff and Appellant.

SMTD Law, Robert J. Berens and Jeffrey D. Hook, for Defendant and Respondent.

11