[Civ. No. 55029. Second Dist., Div. Four. Nov. 6 1979.]

CENTRAL INDUSTRIAL ENGINEERING COMPANY,
INC., Plaintiff, Cross-defendant and Appellant, v.
STRAUSS CONSTRUCTION COMPANY, INC., et al.,
Defendants, Cross-complainants and Respondents.

462

COUNSEL

Newton & Irvin and Richard B. Newton for Plaintiff, Cross-defendant and Appellant.

Neiman & Billet, Allen I. Neiman and Patricia M. Wolfe for Defendants, Cross-complainants and Respondents.

OPINION

**KINGSLEY, J.**—Defendant Strauss Construction Company (Strauss) contracted with the County of Los Angeles to construct a sheriff's sub-station. It entered into a subcontract with plaintiff Central Industrial Engineering Company to provide the prison equipment for that station. The total subcontract price, including extras, was $68,145 of that sum, $61,298.10 was duly paid, leaving a balance of $6,846.90 unpaid. Plaintiff completed its work not later than August 27, 1974; the entire job was accepted by the county on November 6, 1974. On November 14, 1974, not having been paid the final sum, plaintiff filed with the county a stop notice. On November 26, 1974, the county made its final payment to Strauss, withholding $7,531.29 under the stop notice. On January 10, 1975, plaintiff filed suit against Strauss, claiming the $6,846.90 plus interest, attorney fees and costs. At about that time, Strauss offered to pay to plaintiff the sum of $6,846.90, which offer was rejected because it did not include the other items claimed by plaintiff. Strauss cross-complained, contending that the filing of the stop notice was premature and constituted a breach of contract. It sought a set-off against the $6,846.90, which it admitted was due, for attorney fees and costs. After a trial, judgment was entered for plaintiff in the sum of $4,139.15, a figure arrived at by deducting from the amount admittedly due, $2,143.75 attorney fees to Strauss and $546 as the cost of a bond secured by Strauss to secure release of money withheld by the county under the stop notice.

Plaintiff has appealed; we reverse.

I

On July 17, 1972, Strauss sent to plaintiff two documents—a formal contract and a rider. So far as is here pertinent, those documents provided that 85 percent of the amount due to plaintiff was to be paid to it on or about the 15th day of the month following completion of work by plaintiff, with this additional proviso: "except the final payment, which the said Contractor shall pay to the said Sub-contractor within 30 days after the Sub-contractor shall have completed his work to the full satisfaction of the said Architect or Owner, all provided that Contractor has received payment from the owner." On October 20, 1972, plaintiff returned those two documents, with a letter stating that it "is hereby

made a part of the subcontract agreement dated the 17th day of July 1972." The letter contained the following changes in the documents of July 17th: "Article 17: Delete. Following Paragraph: *Change 85% to; 'Ninety-90%' and Delete; 'all provided that Contractor has received payment from the owner.'*" The letter and accompanying documents were received by Strauss on October 24, 1972; they were stapled together and returned to plaintiff on October 26th, Strauss' copy of the letter bearing a notation made by Strauss: "Attach to Central Contract." Thereafter, work under the subcontract proceeded, with Strauss withholding from progress payments 10 percent as the letter had provided.

■ The trial court held that only the two original documents comprised the contract and, therefore, that payment of the final payment was not due when the stop notice was filed. In so holding we conclude that the trial court erred. The letter of October 20, 1972, was, in legal effect, a counteroffer by plaintiff, which Strauss was free to accept or reject. It never objected to the proposed modification, acted on it in withholding from progress payments 10 percent rather than the 15 percent provided in the original documents, and allowed plaintiff to proceed with work in reliance on the three documents as constituting the entire integrated contract.

## II

■ However, the contract, as we have held it to be, called for payment by Strauss 30 days after the work was accepted by the county. That acceptance was evidenced by the county's filing of a notice of completion on November 6, 1974. It follows that the stop notice was filed some three weeks before plaintiff was entitled to payment. It is the contention of Strauss that, even assuming that it was required to pay plaintiff prior to receipt by Strauss of the final payment from the county, the notice, being filed prior to payment being due, was "premature." We reject that argument also.

Section 3184 of the Civil Code, dealing with stop notices on public works, provides: "To be effective, any stop notice pursuant to this chapter must be served *before* the expiration of: (a) Thirty days after the recording of a notice of completion...." (Italics added.) We can see in that section no requirement that the stop notice may not be filed prior

to the due date of the payment involved. Nor are we cited to any authority imposing that requirement. In fact, there is language (perhaps dicta) in *Miller* v. *Mountain View Sav. & L. Assn.* (1965) 238 Cal. App.2d 644 [48 Cal.Rptr. 278], at page 653, that a stop notice may properly be filed "at any time after such agreement has been executed." We need not, in this case, determine whether that language should literally be followed. Here, the notice of completion was filed on November 6th; the time to file a stop notice would expire, under section 3184, on December 6, 1974. Plaintiff had no power to control the date on which the county, having accepted the work, might make its final payment to Strauss.[1] It cannot be said that plaintiff acted in bad faith in taking steps to insure that money to pay it would be available when the payment became due.[2] On the facts of this case, had plaintiff waited until payment was due to it under the contract, the remedy of a stop notice would already have been barred.

### III

As we understand it, Strauss' contention is that the filing of the stop notice prevented it from having funds with which to pay plaintiff. In the first place, nothing in this record shows that, at least by November 6th, when the county paid to Strauss all of the final payment except the money withheld under the stop notice, Strauss was not in possession of funds sufficient to have paid plaintiff. Secondly, as we have held above, the entire contract, including the modification contained in the letter of October 20, 1972, obligated Strauss to pay plaintiff whether or not Strauss had been paid by the county.

### IV

Nor can we see any serious problem to Strauss created by the stop notice. Had Strauss, on December 6th or 7th, told the county to pay plaintiff $6,846.90, the county would have complied. The stop notice was effective only to insure payment to plaintiff; had plaintiff been paid, its purpose would have been accomplished.

---

[1]Under *Pacific Employers Ins. Co.* v. *State of California* (1970) 3 Cal.3d 573, 576, [91 Cal.Rptr. 273, 477 P.2d 129] a stop notice is ineffective if filed after the owner has paid its obligations to the contractor.

[2]It is true that, even without a stop notice, plaintiff might have sued Strauss and its bonding company; but the policy of the stop notice law is that a subcontractor need not confine itself to those alternative remedies.

■ However, Strauss made no effort, when the final payment to plaintiff became due on December 6th, to pay, or tender to, plaintiff the final payment. It waited until January of 1975, even to make a tender. At that time, payment was, on any theory, past due and plaintiff was entitled to reject a tender of only the principal when it had, by that time, become entitled to interest and (under the contract) attorney fees.[3] It follows that plaintiff was entitled to judgment on its complaint for $6,846.90 plus interest from December 6th and attorney fees.

The judgment is reversed with directions to enter a new and different judgment in favor of plaintiff, in the amount of $6,846.90, plus interest from December 6, 1974,[4] together with its costs of suit and such attorney fees as the trial court, on remand shall find to be reasonable, including an allowance for attorney fees on this appeal.

The judgment is reversed.

Alarcon, J., concurred.

**FILES, P. J.**—Dissenting. I would affirm the judgment.

The crucial issue of fact was whether Strauss manifested assent to Central's counter proposal to delete the language "all provided that Contractor has received payment from the owner." The trial court found it did not. Therefore payment of the last installment to Central was not due until the county paid Strauss. Although Central was legally entitled to serve a stop notice, the effect was to postpone the event from which interest would begin to run.

The filing of this action seeking interest and attorney fees was both premature and uncalled for. In disregarding the factual basis of the trial court's judgment, the majority will unjustly mulct Strauss for thousands of dollars in attorney fees.

A petition for a rehearing was denied November 28, 1979.

---

[3]Strauss, having refused to pay anything over the $6,846.90, cannot now object that plaintiff *might* have demanded more interest or fees than were properly due to it.

[4]We are advised that, on January 12, 1978, Strauss tendered to plaintiff the $4,139.15 called for by the judgment herein. Of course, that payment does not bar plaintiff from here contending that the judgment was for less than it was entitled to. (6 Witkin, Cal. Procedure (2d ed. 1971) Appeal, § 138, p. 4134.) However, in computing interest, the tender on January 12, 1978, should be taken into consideration.