Filed 7/23/14
See Dissenting Opinion

**CERTIFIED FOR PUBLICATION**

**IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA**

**FOURTH APPELLATE DISTRICT**

**DIVISION TWO**

| | |
|---|---|
| GOLDEN STATE BORING & PIPE JACKING, INC., | E054618 |
| Plaintiff, Cross-defendant and Appellant, | (Super.Ct.No. RIC502935) |
| v. | OPINION |
| EASTERN MUNICIPAL WATER DISTRICT, | |
| Defendant and Cross-complainant; | |
| SAFECO INSURANCE COMPANY, | |
| Defendant, Cross-defendant and Respondent. | |

APPEAL from the Superior Court of Riverside County. Gloria Connor Trask, Judge. Affirmed.

Law Offices of Timothy P. Creyaufmiller and Timothy P. Creyaufmiller for Plaintiff, Cross-defendant and Appellant.

1

Sedgwick, Jonathan J. Dunn, Andrew C. Harris, Bryan K. Lang and Hall R. Marston for Defendant, Cross-defendant and Respondent.

No appearance for Defendant and Cross-complainant.

The Eastern Municipal Water District (EMWD) hired general contractor S.J. and Burkhardt, Inc. (SJB) for a public works construction project in 2006. Safeco Insurance Company (Safeco) executed performance and payment bonds for the project. Plaintiff Golden State Boring & Pipe Jacking, Inc. (GSB) was a subcontractor for the project, completing its work by September 2006, but it did not receive payment of $577,038.37, owed.

In March 2008, SJB sent a voluntary default letter to Safeco. In July 2008, GSB sued SJB, EMWD, and Safeco for the unpaid amounts under the contract, separately seeking payment from Safeco under its payment bond. EMWD filed a cross-complaint to interplead retained sums. Safeco made a motion for summary judgment on the cause of action for payment under the bond on the ground that GSB's claim was untimely. The trial court granted the motion as to that cause of action, finding that there had been three cessations of labor that triggered GSB's duty to file a stop notice in order to secure payment under Safeco's payment bond. At a subsequent court trial on the contract claims, GSB was awarded judgment against SJB, and Safeco was awarded judgment on the interpleader action.

2

GSB appeals the summary judgment ruling claiming (a) the trial court erroneously overruled its objections to evidentiary matters presented in support of Safeco's summary judgment, and (b) the court erred in finding the action was untimely. We affirm.

**BACKGROUND**

From the pleadings we discern the following facts:

EMWD hired SJB as general contractor on "Specification No. 934W, Nuevo Road/I-215 Water Transmission Pipeline Project, Perris California" (the Project). On April 26, 2006, SJB entered into a subcontract agreement with GSB to perform the tunneling portion of the project. For these services, SJB originally agreed to pay GSB $565,150. After GSB agreed to provide additional services, SJB agreed to pay an additional $27,912.20, for a total project price of $593,062.20 On April 18, 2006, Safeco executed a payment bond for the Project. GSB completed its portion of the work on the Project in September 2006.

Prior to completion of the Project, there were three cessations of labor which exceeded 30 days: the first occurred between November 11, 2006, and December 17, 2006; the second occurred between April 4, 2007 and May 20, 2007, and the third occurred between May 20, 2007, and October 4, 2007. The overall Project was completed in 2008. GSB alleged that it filed a stop notice with EMWD on January 2, 2008, in the amount of $577,038.37.[1] On March 24, 2008, SJB informed Safeco by letter

---

[1] The exhibits included in the record pertaining to the summary judgment motion do not include a stop notice filed by GSB. However, in the Joint Statement of Stipulated Facts and Evidence submitted after the summary judgment motion in connection with the

3

that it could not meet its obligations. Safeco sent a letter to EMWD on March 27, 2008, regarding SJB's default.

In July 2008, GSB filed suit against SJB for nonpayment under the contract, as well as in common counts. The fourth cause of action included EMWD as a defendant for Enforcement of Stop Notice, and the fifth cause of action named Safeco in a claim on the Stop Notice Release Bond and Payment Bond. In October 2008, EMWD recorded a Notice of Acceptance signifying completion of the Project.

On August 27, 2008, EMWD answered the complaint and filed a cross-complaint in interpleader. EMWD tendered the amount of $86,444.59, which it had withheld from SJB pursuant to the stop notice. EMWD was subsequently dismissed from the action. SJB's default was entered June 8, 2009.[2]

On December 22, 2010, Safeco filed a motion for summary judgment as to the fifth cause of action relating to the payment bond. In support of its motion, Safeco submitted a declaration of one of its counsel, Brian Lang, as well as a declaration regarding the summary of voluminous documents received during discovery from

---

pending court trial, the parties stipulated that "[o]n or about January 2, 2008, GSB filed a stop notice with EMWD in the amount of $577,038.37 in connection with the Project."

[2] The record contains EMWD's request to enter SJB's default as to the cross-complaint, however the Register of Actions reflects that GSB requested entry of SJB's default on the original complaint on that date. On August 10, 2011, following a prove-up hearing on SJB's default, judgment was entered in GSB's favor in the amount of $1,467,734.48. Since SJB never made a general appearance in the action, and no one disputed that a default was entered as to SJB by plaintiff during the default prove up, we assume that SJB's default on GSB's original complaint was duly entered. (Evid. Code, § 664.)

4

EMWD. Those documents related to the daily performance and non-performance of work on the Project, including certified payroll reports, inspector's reports, EMWD safety inspection reports, and statement of non-performance. The motion was also based on GSB's responses to interrogatories propounded by Safeco, and EMWD's response to Safeco's Request for Production of Documents.

In response to the motion, GSB generally objected to both declarations, citing hearsay, lack of personal knowledge, opinion, speculation, and that the declarant was not an expert. However, GSB did not dispute that there were cessations of labor, arguing instead that the issue of cessation of labor is not relevant unless there has been no notice of completion. Nor did GSB object to EMWD's responses to the Request for Production of Documents, by which Safeco obtained the documents summarized by Lang.

The trial court overruled GSB's objections and granted Safeco's motion for summary judgment. Notice of Entry of the Order and Judgment on the Fifth Cause of Action was filed on August 2, 2011. GSB filed notice of appeal from that order on September 19, 2011.

The matter proceeded to court trial on the remaining causes of action based on various stipulated facts and evidence. On the first three causes of action against SJB, the court awarded GSB $577,038.37 under the contract, plus penalties pursuant to Business and Professions Code section 7108.5 in the amount of $590,016.60, plus interest on progress payments in the amount of $242, 981.62, plus penalties pursuant to Business and Professions Code section 7107 in the amount of $50,863.50, plus interest on that sum in

the amount of $6,834.39, for a grand total of $1,467,734.38.  On the fourth cause of action for the right to the funds submitted by way of the interpleader, the court ruled that Safeco was entitled to the interpleaded funds.

GSB appealed from the judgment in favor of Safeco on the Fourth Cause of Action on January 6, 2012.

## DISCUSSION

Although GSB filed notices of appeal from both the ruling on the summary judgment motion and from the judgment on the Fourth Cause of Action in favor of Safeco, the focus of its brief relates solely to the order granting summary judgment on the Fifth Cause of Action.  Because GSB has not provided any assignment of error or authority to support a claim of error respecting the Fourth Cause of Action, we deem such claims to have been abandoned.  (*Wall Street Network, Ltd. v. New York Times Co.* (2008) 164 Cal.App.4th 1171, 1177 [appellants forfeit or abandon contentions of error by failing to raise or address the contentions in their briefs on appeal].)

1. *The Court Did Not Abuse Its Discretion in Overruling GSB's Evidentiary Objections in Connection With the Summary Judgment Motion.*

GSB argues that the trial court erred in overruling its objections to the declarations of Bryan Lang, one of Safeco's counsel, and the exhibits attached thereto.  GSB argues that the declarations and exhibits were inadmissible hearsay and unauthenticated, requiring reversal of the summary judgment.  We disagree.

6

During summary judgment proceedings, GSB objected to the declarations of Safeco's counsel, Bryan Lang on the grounds of "Hearsay (Evid. Code Section 1200), Lack of Personal Knowledge (Evid. Code Section 702), Opinion (Evid. Code Section 803), Speculation (Evid. Code Section 800), Irrelevant (Evid. Code sections 210, 350-351); Not an Expert (Evid. Code Section 720)."[3] The declarations, however, were provided to summarize the exhibits and the document summary attached thereto.

The same rules of evidence that apply at trial also apply to the declarations submitted in support of and in opposition to motions for summary judgment. (*Bozzi v. Nordstrom, Inc.* (2010) 186 Cal.App.4th 755, 761.) Declarations must show the declarant's personal knowledge and competency to testify, state facts and not just conclusions, and not include inadmissible hearsay or opinion. (*Ibid.*)

We review the trial court's evidentiary rulings on summary judgment for abuse of discretion. (*Park v. First American Title Co.* (2011) 201 Cal.App.4th 1418, 1427, citing *Carnes v. Superior Court* (2005) 126 Cal.App.4th 688, 694; see also *DiCola v. White Brothers Performance Products, Inc.* (2008) 158 Cal.App.4th 666, 679.) As the party challenging the court's decision, it is plaintiff's burden to establish such an abuse, which we will find only if the trial court's order exceeds the bounds of reason. (*DiCola v. White Brothers Performance Products, Inc., supra,* 158 Cal.App.4th at p. 679.) On review, we view the evidence in the light most favorable to plaintiff as the losing party and liberally

---

[3] Of the 14 objections to Lang's Declaration accompanying his Summary of Voluminous EMWD Documents, No. 2-14 were identical in wording citing the grounds set out in the text. Objection No. 1 was based only on Hearsay (Evid. Code, § 1200) and Lack of Personal Knowledge. (Evid. Code, § 702.)

construe plaintiff's evidentiary submissions while strictly scrutinizing defendant's evidence, in order to resolve any evidentiary doubts in plaintiff's favor. (*McDonald v. Antelope Valley Community College Dist.* (2008) 45 Cal.4th 88, 96-97.)

Code of Civil Procedure, section 437c, subdivision (b)(1), expressly provides that a motion for summary judgment shall be supported by "affidavits, declarations, admissions, answers to interrogatories, depositions, and matters of which judicial notice shall or may be taken." It further provides that the supporting papers shall include a separate statement setting forth plainly and concisely all material facts which the moving party contends are undisputed and that each of the material facts shall be followed by a reference to the supporting evidence.

Code of Civil Procedure, section 437c, subdivision (b)(2), provides for an opposition to the motion, which, where appropriate, shall consist of affidavits, declarations, admission, answers to interrogatories, depositions, and matters of which judicial notice shall or may be taken. Supporting and opposing affidavits or declarations shall be made by any person on personal knowledge, shall set forth admissible evidence, and shall show affirmatively that the affiant is competent to testify to the matters stated in the affidavits or declarations. (Code Civ. Proc., § 437c, subd. (d).)

Ordinarily, declarations are considered "'hearsay and are inadmissible at trial, subject to specific statutory exceptions unless the parties stipulate to the admission of the declarations or fail to enter a hearsay objection. [Citation.]' [Citation.]" (*Oiye v. Fox* (2012) 211 Cal.App.4th 1036, 1050.) By requiring parties to use affidavits and

declarations in connection with summary judgment motions, Code of Civil Procedure section 437c, subdivision (b)(1), is a statutory exception to the hearsay rule.

Evidence Code section 1521 expressly permits the admission of secondary evidence to prove the content of a writing except when a "genuine dispute exists concerning material terms of the writing." Section 1523, subdivision (d), of the Evidence Code expressly permits oral testimony of the content of a writing if "the writing consists of numerous accounts for other writings that cannot be examined in court without great loss of time, and the evidence sought from them is only the general result of the whole." (See *Heaps v. Heaps* (2004) 124 Cal.App.4th 286, 294.) The declaration of counsel was properly considered by the court where the summary motion procedure authorizes the trial court to rely upon declarations. (Code Civ. Proc. § 437c, subd. (b)(1).)

The statutory provisions adequately address the hearsay objections to Lang's declarations. The objection based on Lang's personal knowledge was properly overruled because the declaration states that Lang had personal knowledge of the matters that had been produced in response to Safeco's discovery requests. GSB's contention that Lang was not present when EMWD turned over the documents is not well taken, where Lang's declaration did not represent he was present, and where GSB's own counsel indicated that he was present at the time of the document production. None of the objections claim the exhibits were not the same exhibits turned over during the production of documents, or that they were not properly authenticated.

9

As to the documentary evidence attached to Lang's declaration, Safeco included a copy of its Request for Production of Documents, which was propounded to EMWD, and EMWD's Responses to Demand for Documents. EMWD's Responses established the foundation for the documents, including the contract, subcontract, payment bond, certified payroll records, documents relating to cessations of labor, and the Notice of Acceptance.

Although it objected to Lang's declarations, GSB did not object to the EMWD's responses, the exhibits themselves, and it did not dispute the material terms of the writings attached as exhibits. They were properly considered by the court in ruling on the motion.[4] In fact, in its opposing papers, and at the hearing on the motion, GSB did not even dispute that there had been cessations of labor. It did not present declarations, affidavits, depositions, or other evidence to contradict the assertion that there had been three separate cessations of labor. Nor did GSB provide evidentiary support for its assertion at the hearing on the motion that the cessations related to normal project planning and execution. GSB's hearsay objections were thus properly overruled.

Even if we were to find that the court improperly overruled GSB's objections, GSB has failed to establish prejudice. The party challenging the ruling must establish prejudice. (*Truong v. Glasser* (2009) 181 Cal.App.4th 102, 119.) In this case, GSB failed to produce any evidence to support its position on the existence of a material issue

---

[4] At oral argument, GSB argued that it did object to the exhibits themselves, but a careful review of the objections reveals a line-by-line challenge to the declarant's statements, and did not dispute the content of the exhibits themselves.

10

of fact for which a trial was required.  Code of Civil Procedure, section 437c, subdivision (b)(3), provides, "The opposition papers shall include a separate statement that responds to each of the material facts contended by the moving party to be undisputed, indicating whether the opposing party agrees or disagrees that those facts are undisputed.  The statement also shall set forth plainly and concisely any other material facts that the opposing party contends are disputed.  *Each material fact contended by the opposing party to be disputed shall be followed by a reference to the supporting evidence.*  Failure to comply with this requirement of a separate statement may constitute a sufficient ground, in the court's discretion, for granting the motion."  [Italics added.]

GSB provided no reference to supporting evidence as to each material fact it contended was disputed.  Nor did it submit evidence to contradict the showing of Safeco, or to support the existence of a factual dispute as to whether there were three separate cessations of labor.  Thus, a favorable ruling on the evidentiary objections would not have changed the outcome; GSB did not show by "specific facts" that the requisite triable issue of material fact was present.  (*Tibor v. Superior Court* (1997) 52 Cal.App.4th 1359, 1368, 1369.)  Instead, it merely provided a different legal interpretation of what triggered the duty to file its stop notice, an issue of law.  (See *Twaite v. Allstate Ins. Co.* (1989) 216 Cal.App.3d 239, 254 [where plaintiff concluded counter-affidavits were unnecessary, the issue was a matter of law].)

Notwithstanding GSB's objections, there was no dispute as to whether there had been cessations of labor, so there was no triable issue as to that material *fact*; there was

11

only a question of law as to whether GSB's stop notice was timely.  The purpose of the law of summary judgment is to provide courts with a mechanism to cut through the parties' pleadings in order to determine whether, despite their allegations, trial is in fact necessary to resolve their dispute.  (*Aguilar v. Atlantic Richfield Co.* (2001) 25 Cal.4th 826, 843.)

In the absence of a triable issue on this factual issue, summary judgment was proper.  (*Bartholomew v. SeaRiver Maritime, Inc.,* (2011) 193 Cal.App.4th 699, 716; see also, *Johnson v. United Cerebral Palsy/Spastic Children's Foundation of Los Angeles and Ventura Counties* (2009) 173 Cal.App.4th 740, 754, citing *Western Mutual Ins. Co. v. Yamamoto* (1994) 29 Cal.App.4th 1474, 1481 [where there is no genuine issue of material fact, the appellate court should affirm the judgment of the trial court if it is correct on any theory of law applicable to the case].)

2. *The Court Correctly Determined that GSB's Action on the Payment Bond Was Untimely.*

GSB argues its action on the payment bond was timely because the limitations period began to run from the date the Notice of Acceptance was record pursuant to former Civil Code sections 3249 and 3184, subdivision (a).  We disagree.

Former Civil Code section 3249 (now Civil Code section 9558), provided that a suit against a surety on a payment bond may be "brought at any time after the claimant has furnished the last of the labor or materials, or both, but must be commenced before the expiration of six months after the period in which stop notices may be filed as

12

provided in Section 3184.  Former Civil Code section 3184,[5] in turn, provided that, "To be effective, any stop notice . . . must be filed *before* the expiration of:  [¶]  (a) Thirty days *after* the recording of a notice of completion (sometimes referred to in public works as a notice of acceptance) or notice of cessation, if such notice is recorded.  [¶]  (b) If no notice of completion or notice of cessation is recorded, 90 days after completion or cessation."  [Italics added.]

We have italicized the word "after" in quoting the statutory provision because in an unbroken, albeit older line of cases dealing with similar claims, it has been held that a claim of lien filed before the notice of completion (or acceptance) has been recorded is premature and ineffectual.  (*Davis v. MacDonough* (1895) 109 Cal. 547, 550 [claim of lien filed before completion of building provided no right of recovery]; *Gross v. Hazeltine* (1930) 107 Cal.App. 446, 455; *F.E. McCreary v. Toronto Midway Oil Co., Ltd.* (1918) 38 Cal.App. 17, 20 [premature claim of lien conferred no rights].)

These cases are instructive because the language of the claim-of-lien statutes at issue used the same language as the statutory scheme governing stop notices, requiring the claims of lien to be filed *after* the completion of the improvement.  The only case we have found involving a premature stop notice did not address these authorities, and ignored the plain language of the statute.  (See *Central Industrial Engineering Co., Inc. v.*

---

[5] Civil Code sections 3249 and 3184 were repealed by Senate Bill 189 (Stats. 2010, ch. 697, §16).  The provisions governing the effectiveness of a stop payment notice are currently found in Civil Code, § 9356, while the time for commencing an action to enforce the liability on a payment bond are currently found in Civil Code, section 9558.

*Strauss Construction Co., Inc.* (1979) 98 Cal.App.3d 460, 464-465.) This authority has never been cited in subsequent decisions, and was not cited by GSB, which made no argument addressing premature notices. According to the plain language of the statute, the stop notice in this case was premature, so we must determine when the work of improvement was "completed."

"Completion," as that term is used for works of improvement, was defined by former Civil Code section 3086.[6] With respect to works of improvement subject to acceptance by any public entity, former Civil Code section 3086 provided that "the completion of such work of improvement shall be deemed to be the date of such acceptance; provided, however, that, except as to contracts awarded under the State Contract Act, Chapter 3 (commencing with Section 14250), Part 5, Division 3, Title 2 of the Government Code,[7] a cessation of labor on any public work for a continuous period of 30 days shall be a completion thereof."

Completion of work on the contract is not the "cessation of labor" referred to in section 3086. (*W.F. Hayward v. Transamerica Ins. Co.* (1993) 16 Cal.App.4th 1101, 1109 (*Hayward*), citing *Krueger Brothers Builders, Inc. v. San Francisco Housing Authority* (1988) 198 Cal.App.3d 1, 7.) A "cessation" is "a complete work stoppage" in which "work by all trades has ceased on the project." (*Hayward,* at p. 1110.) Where no notice of completion is filed, the cessation of labor for more than 30 days triggers the

---

[6] Currently, Civil Code section 8180 defines when a work of improvement is completed.

[7] That section was also repealed. See Public Contract Code, § 10100.

duty to file a stop notice. (Former Civ. Code, § 3184, subd. (b).) A notice of completion (or acceptance), tardily filed, is not the equivalent of completion within the meaning of the statute. (*C.Ganahl Lumber Co. v. Thompson* (1928) 205 Cal.354, 356-357.)

GSB observes that in a public works context, completion occurs upon acceptance of the project by the awarding body. (Former Civ. Code, § 3086; *Dept. of Indus. Relations v. Fid. Roof Co.* (1997) 60 Cal.App.4th 411, 418.) If so, GSB failed to file a timely stop notice within 30 days *after* the notice of acceptance. However, if there was a 30-day cessation of labor within the meaning of former sections 3086, then that work stoppage was a "completion" pursuant to sections 3086 and 3184, and commenced the running of the stop notice period. (*Hayward, supra,* 16 Cal.App.4th at p. 1108, 1110.) This construction of the statutory language is of longstanding. (See *Robison v. Mitchel* (1911) 159 Cal. 581, 590-591 [where there was cessation from labor upon an unfinished contract, even though labor on the building continued, there was a constructive completion which required the filing of lien claims after 30 days].)

GSB also argues that subdivision (a) of former Civil Code section 3184 provides that the recordation of the Notice of Acceptance triggers the time limit, and that EMWD recorded a Notice of Acceptance respecting the project after GSB had filed its lawsuit. The dissent agrees with this reasoning. However, this argument fails to take into account the plain language of section 3184 requiring that the stop notice be filed *after* the Notice of Acceptance has been recorded. As we have pointed out, the stop notice in the present case was premature and thus ineffectual. If the Notice of Acceptance triggered the

15

commencement of the time limit for filing the stop notice, no stop notice was filed after that event.

Finally, GSB argues that to find that the cessation of labor constituted a completion would require subcontractors and suppliers to monitor work almost daily and that it ignores the realities of phased construction work, which are frequently halted while plans are changed, easements are perfected, or permits are obtained. Unfortunately, GSB failed to present any competent evidence (declarations, exhibits, etc.) supporting an assertion that the cessations of labor were excused in this manner. Further, GSB's responses to interrogatories acknowledged that its last day of work on the project "Sometime in late September of 2006; believed to be the beginning of the week of the 25th."

In order to defeat the summary judgment motion, it was incumbent upon GSB to establish either that the recording of the Notice of Acceptance was the sole triggering event, or that there had been no cessation of labor. Otherwise, the cessations of labor constituted "completion" pursuant to the definition in former Civil Code section 3086 and commenced the period for filing stop notices regarding public works (*Hayward, supra,* 16 Cal.App.4th at p.1110), and the tardily recorded Notice of Acceptance did not re-commence it.

Additionally, we doubt that former Civil Code section 3184 is susceptible to an interpretation that a Notice of Acceptance recorded *after* GSB filed its stop notice—and its lawsuit—extends the limitation period. The terms of former Civil Code section 3184

16

require a stop notice to be filed 30 days *after* the recording of a notice of completion (or acceptance), unless no such notice is recorded. By its own argument, no Notice of Acceptance had been filed before GSB filed its stop notice or the lawsuit, so GSB did not comply with former Civil Code section 3184 by filing the stop notice within 30 days *after* the Notice of Acceptance. Additionally, GSB never established it had actually filed a stop notice, so any argument relating to its compliance with former Civil Code section 3184 is purely academic, and does not create a triable issue of material fact.[8]

The exhibits submitted in support of the summary judgment motion established three separate and distinct periods in which all work stopped on the Project. These periods occurred between 2006 (after GSB completed its portion of the work) and 2007. GSB did not provide any counter-evidence to show that work had not stopped, so there was no triable issue of material fact as to whether a cessation of labor had occurred. For this reason, the trial court concluded it had to accept the timeline presented in Safeco's papers, and found the action was time barred.

Notwithstanding GSB's objections, it was undisputed that three separate cessations of labor, for more than 30 days each, occurred after GSB had completed its portion of the work, and more than a year before the Notice of Acceptance was accepted. In this respect, the present case is governed by the holding of *Hayward, supra*, 16 Cal.App.4th 1101, on which the trial court relied. The cessations constituted "completion" under the statute triggering GSB's time limit within which to file a stop

---

[8] Although the complaint alleges—on information and belief—that a preliminary twenty-day notice was filed by GSB, it never presented evidence of a stop notice.

17

notice or bring its lawsuit.  The fact that EMWD "tardily" filed a Notice of Acceptance did not extend the limitations period.

## DISPOSITION

The judgment is affirmed.  Safeco is entitled to costs on appeal.

CERTIFIED FOR PUBLICATION

RAMIREZ
P. J.


I concur:

CODRINGTON
J.

18

[*Golden State Boring & Pipe Jacking, Inc. v. Eastern Municipal Water District*, E054618]

King, J., Dissenting.

I disagree with the majority on two accounts. First, I believe the action was filed in a timely manner under Civil Code section 3184, subdivision (a).[1] Second, even if I was to conclude that the relevant inquiry as to the beginning of the limitations period was the "cessation of work for 30 or more days," I would find that defendant, Eastern Municipal Water District (EMWD), on this issue failed to submit admissible evidence so as to meet its initial burden of production.

A. *The Action Was Timely Filed*

A simple reading of the relevant statutes shows that the present matter was timely filed and that the beginning of the limitations period was the date of the recordation of the notice of completion, which was October 9, 2008. The pertinent statutes provide:

Section 3294

"Suit against the surety or sureties on the payment bond may be brought by any claimant, or his assigns, at any time after the claimant has furnished the last of the labor or materials, or both, but must be commenced before the expiration of six months after the period in which stop notices may be filed as provided in Section 3184."

---

[1] All further statutory references are to the Civil Code unless otherwise indicated.

1

Section 3184

"To be effective, any stop notice pursuant to this chapter must be served before the expiration of:

"(a)  Thirty days after the recording of a notice of completion (sometimes referred to in public works as a notice of acceptance) or notice of cessation, if such notice is recorded.

"(b)  If no notice of completion or notice of cessation is recorded, 90 days after completion or cessation."

Section 3086

"Completion" means, in the case of any work of improvement other than a public work, actual completion of the work of improvement.  Any of the following shall be deemed equivalent to a completion:

"(a)  The occupation or use of a work of improvement by the owner, or his agent, accompanied by cessation of labor thereon.

"(b)  The acceptance by the owner, or his agent, of the work of improvement.

"(c)  After the commencement of a work of improvement, a cessation of labor thereon for a continuous period of 60 days, or a cessation of labor thereon for a continuous period of 30 days or more if the owner files for record a notice of cessation.

"If the work of improvement is subject to acceptance by any public entity, the completion of such work of improvement shall be deemed to be the date of such acceptance; provided, however, that, except as to contracts awarded under the State

2

Contract Act . . . a cessation of labor on any public work for a continuous period of 30 days shall be a completion thereof."

In viewing the statutes together, a suit against a surety must be filed within six months of the time for the filing of a stop notice. Under section 3184, the stop notice must be filed within 30 days of the recordation of the notice of completion or notice of cessation. In a case in which neither a notice of completion or notice of cessation is recorded, the stop notice must be filed within 90 days of the actual cessation or completion of the work. In the absence of a recording of either of these notices, a public work of improvement is deemed completed when there has been a cessation of labor for a continuous period of 30 days.

Here, the notice of completion was recorded on October 9, 2008. Plaintiff, Golden State Boring & Pipe Jacking, Inc. (GSB), had until May 9, 2009, in which to file its action. The action was filed on July 3, 2008, more than 10 months before the running of the limitations period. Thus, it was timely filed under section 3184, subdivision (a). As such, we never get to the issue of whether there was a "cessation of labor" for a period of 30 days or more.[2]

Both EMWD and the majority rely almost exclusively on *W. F. Hayward Co. v. Transamerica Ins. Co*. (1993) 16 Cal.App.4th 1101 for the proposition that GSB did not timely file its action after there had been a cessation of work longer than 30 days. Both

---

[2] Section 3184 does not say that the limitations period starts at the filing of the notice of completion or 90 days after a cessation of labor, "whichever occurs first." The statute plainly states that we are concerned with a cessation of labor only when there has been no recordation of a notice of completion or notice of cessation.

EMWD and the majority ignore, however, the facts and the basic premise upon which the decision was based.

In *W. F. Hayward Co. v. Transamerica Ins. Co., supra,* 16 Cal.App.4th 1101, Cates Construction, Inc. (Cates) contracted with the County of Los Angeles (the County) to construct the Lost Hills sheriff's station. The plaintiff contracted with Cates to provide certain labor and materials for the job. A dispute arose between Cates and the County; the County notified Cates that it was suspended from the job. Thereafter Cates and the County entered into an agreement titled "Termination for Convenience Agreement and Mutual Release," wherein Cates was relieved from performing the job and the County released Cates from any liability. Pursuant to the agreement, all of the contracts entered into between Cates and its subcontractors were assigned to the County. Thereafter, the plaintiff contacted the County seeking to enter into a new contract to perform work. The County refused, indicating that it had been assigned the original contract. The job was eventually finished using the original subcontractors, including the plaintiff. Four months later, the plaintiff sued the County, Cates, and Cates's surety, Transamerica Insurance Co. The County moved for summary judgment based on the fact that Cates was suspended from the job on June 5 and that there was a cessation of work from that date to August 3 (a period of almost 60 days). (*Id.* at pp. 1104-1105.) Based on the termination of the contract with Cates and the cessation of work, the County argued that the last day in which the plaintiff could file its lawsuit was April 5, 1991, thus making the July 17, 1991, filing untimely. (*Id.* at pp. 1108-1109.) The appellate court agreed,

4

finding that there was a cessation of work for a continuous 30-day period and, as such, it constituted "completion" under section 3086. (*Id.* at p. 1110.)

Of importance to that case, however, was that there was no notice of completion recorded. As pointed out by the court at the beginning of its discussion, "the issue here is whether the complaint was filed within six months after the period in which appellant could file stop notices. The parties' dispute centers on what constitutes the period for filing stop notices. [¶] Section 3184, referenced in section 3249, provides that any stop notice 'must be served before the expiration of: [¶] (a) Thirty days after the recording of a notice of completion (sometimes referred to in public works as a notice of acceptance) or notice of cessation, if such notice is recorded. [¶] (b) If no notice of completion or notice of cessation is recorded, 90 days after completion or cessation.' *With regard to Cates's work on the project, the parties do not dispute that neither a notice of completion nor a notice of cessation was filed or recorded. Subdivision (b) is therefore the applicable portion of section 3184.* Application of this provision presents the question: When was there a 'completion or cessation.'? [¶] Because it provides a definition of 'completion,' section 3086 comes into play." (*W. F. Hayward Co. v. Transamerica Ins. Co., supra,* 16 Cal.App.4th at p. 1106, fns. omitted, italics added.)

As is evident from this discussion in *W. F. Hayward Co.*, section 3086 and the cessation of work concept comes into play only when there has been no recordation of a notice of completion or notice of cessation. Here, a notice of completion was recorded;

5

we need go no further.  GSB's action was timely filed based on the recordation of the notice of completion.

B.  *EMWD Failed to Submit Admissible Evidence Relative to There Being a Continuous 30-day Cessation of Labor*

EMWD's entitlement to summary judgment was premised on the notion that GSB's filing of its complaint was untimely.  EMWD's argument is based on the "fact" that there were three cessations of work for 30 days or more, each of which it contends, commenced the limitations period.  To this end, EMWD submitted the following undisputed facts and supporting evidence:

"5.  There was a continuous 30-day cessation of labor on the Project between the dates of November 11, 2006 and December 17, 2006.  [¶]  **Summary of Voluminous EMWD Records at ¶8, supporting documents attached as Exhibits 10 and 11[.]**

"6.  There was a continuous 30-day cessation of labor on the Project between the dates of April 4, 2007 and May 20, 2007.  [¶]  **Summary of Voluminous EMWD Records at ¶9, supporting documents attached as Exhibits 10 and 12[.]**

"7.  There was a continuous 30-day cessation of labor on the Project between the dates of May 20, 2007 and October 4, 2007.  [¶]  **Summary of Voluminous EMWD Records at ¶10, supporting documents attached as Exhibits 10 and 13[.]"**

The "Summary of Voluminous EMWD Records . . ." was prepared by Bryan Lang, an attorney representing the moving party.  In his one and one-half page declaration, he avers that he has "personal knowledge of the foregoing, except as to those

6

matters stated on information and belief . . . ." He indicates that he reviewed the documents produced by EMWD to defendant, Safeco Insurance Company's (Safeco), request to produce documents and, based on that review, compiled an excel spreadsheet which tracked the dates of work on the project.[3] GSB objected to this declaration and summary of records on the grounds of hearsay, lack of personal knowledge, improper opinion evidence, and speculation.

GSB's objections were meritorious and should have been sustained.[4] If the objections had been properly sustained, EMWD would have had no evidence as to undisputed facts Nos. 5, 6, and 7. As such, EMWD would not have met its initial burden of production as to the three cessations of work; its motion therefore would have been denied.

On a motion for summary judgment "[t]he moving party must 'support[]' the 'motion' with evidence including 'affidavits, declarations, admissions, answers to interrogatories, depositions, and matters of which judicial notice'. . . may 'be taken.' [Citation.]" (*Aguilar v. Atlantic Richfield Co*. (2001) 25 Cal.4th 826, 843.) "Supporting and opposing affidavits or declarations shall be made by any person on personal knowledge, *shall set forth admissible evidence*, and shall show affirmatively that the

---

[3] "Declarations based on information and belief are insufficient to satisfy the burden of . . . the moving . . . party on a motion for summary judgment . . . ." (*Lopez v. University Partners* (1997) 54 Cal.App.4th 1117, 1124.)

[4] Whether employing an abuse of discretion standard or a de novo standard, the trial court erred in overruling GSB's objections to EMWD's evidence. (See *Howard Entertainment, Inc. v. Kudrow* (2012) 208 Cal.App.4th 1102, 1114.)

7

affiant is competent to testify to the matters stated in the affidavits or declarations. . . .”
(Code Civ. Proc., § 437c, subd. (d), italics added; *Regents of University of California v. Superior Court* (1996) 41 Cal.App.4th 1040, 1044.)  “The affidavits must cite evidentiary facts, not legal conclusions or ‘ultimate’ facts.  [Citation.]  [¶]  Matters which would be excluded under the rules of evidence if proffered by a witness in a trial as hearsay, conclusions or impermissible opinions, must be disregarded in supporting affidavits.”
(*Hayman v. Block* (1986) 176 Cal.App.3d 629, 639.)

Here, both EMWD and the majority rely on Evidence Code section 1523, subdivision (d), for the proposition that the trial court could consider Lang’s summary of EMWD’s records, along with its attachments, as substantive evidence of cessations of work during the project.[5]

As provided by Evidence Code section 1523, subdivision (d):  “Oral testimony of the content of a writing is not made inadmissible by subdivision (a) if the writing consists of numerous accounts or other writings that cannot be examined in court without great loss of time, and the evidence sought from them is only the general result of the whole.”
Evidence Code section 1523 is a best evidence rule allowing secondary evidence to prove the content of a writing.  “Secondary evidence, of course, must comply with the rules

---

[5]  As stated by the majority:  “Section 1523, subdivision (d), of the Evidence Code expressly permits oral testimony of the content of a writing if ‘the writing consists of numerous accounts for other writings that cannot be examined in court without great loss of time, and the evidence sought from them is only the general result of the whole.’ [Citation.]  The declaration of counsel was properly considered by the court where the summary motion procedure authorizes the trial court to rely upon declarations.”  (Maj. opn. *ante*, at p. 9.)

governing the admissibility of evidence generally, including relevance [citation] and the hearsay rule [citation]." (*Dart Industries, Inc. v. Commercial Union Ins. Co.* (2002) 28 Cal.4th 1059, 1070, fn. 2.)

Here, there was no showing that the documents reviewed for purposes of putting together the Evidence Code section 1523 record summary were otherwise admissible. The content of the documents reviewed was submitted for the truth of the information contained therein (days in which there was a cessation of work on the project) and, as such, were inadmissible hearsay. There was no foundation that the records reviewed were business records of EMWD or official records. (See Evid. Code, §§ 1271, 1280; see also Evid. Code, §§ 1560, 1561.)

Specifically, the documents reviewed for purposes of the summary were produced by EMWD to Safeco, pursuant to a request to produce documents. The 24 requests sought "[a]ny and all" documents in the possession of EMWD, which were responsive to the individual requests. The requests were not limited to "business records" of EMWD. Further, the request to produce documents did not ask that any custodian of records submit a verification coinciding with the foundational requirements of Evidence Code section 1271 or 1280. The request merely sought "a verification executed under penalty of perjury that the copies provided are adequate and true and complete copies of the materials in question."

In looking to the documents in our record which were reviewed and attached to Lang's summary, it is evident that very few of the documents reviewed could be

9

characterized as "business records" of EMWD. Of the 80 pages that are attached to the declaration and spreadsheet, 18 pages would appear to be EMWD documents. The remaining 62 pages are documents of SJ Burkhardt, Inc., SJ & B Group, Inc., and Cozad & Fox, Inc. In the absence of foundation, none of these documents can properly serve as the basis for Lang's summary of records.

In discussing Evidence Code section 1509, the predecessor to Evidence Code section 1523, the court in *Vanguard Recording Society, Inc. v. Fantasy Records, Inc.* (1972) 24 Cal.App.3d 410, 418-419, stated: "Pursuant to Evidence Code, section 1509, a summary of business records consisting of numerous accounts or other writings that cannot be examined in court without great loss of time, is admissible in evidence upon a showing that the actual business records are entitled to admission in evidence . . . ." "A person who directs or supervises the preparation of business records may testify to their contents." (*Kirby v. Alcoholic Bev. etc. Appeals Bd.* (1970) 8 Cal.App.3d 1009, 1017.)

*Pajaro Valley Water Management Agency v. McGrath* (2005) 128 Cal.App.4th 1093 is perhaps most instructive. There, the plaintiff sued the defendant for unpaid charges for water extracted from the defendant's well. On its motion for summary judgment, the plaintiff submitted a declaration of its general manager which averred that the general manager had reviewed the various bills sent to the defendant over a three-year period of time and that the defendant owed $33,277.18. In the declaration, the general manager indicated that "'[*t*]*he computation is attached as Exhibit B*.' . . . Exhibit B consist[ed] of a table summarizing the [plaintiff's] claimed damages . . . ." (*Id.* at p.

10

1106.)  The defendant objected to the declaration and exhibit on numerous grounds, including lack of foundation in personal knowledge, hearsay, and lack of authentication.  The trial court overruled the objections, stating that the plaintiff is entitled "'to provide a summary calculation of damages to simplify the presentation.'"  (*Id.* at p. 1107.)

The appellate court disagreed.  "[T]he McNiesh declaration explicitly describes the 'amount owed' (i.e., the matter asserted) as being derived from yet a third level of documentary hearsay, the 'bills' containing the 'amounts' that were 'reflected in' the final figure.  The original bills might be admissible over a hearsy objection as business records (Evid. Code, § 1271) or perhaps official records (Evid. Code, § 1280), but to establish either exception would require a showing of the time and circumstances of the documents' creation.  (Evid. Code, §§ 1271, 1280.)  No such showing was attempted. . . . [¶]  In overruling [the defendant's] objections, the trial court cited Evidence Code section 1521 . . . while alluding to unspecified hearsay exceptions.  [Evidence Code s]ection 1521 permits the introduction of 'otherwise admissible secondary evidence' to prove the contents of a writing.  It does not excuse the proponent from complying with other rules of evidence, most notably, the hearsay rule.  [Citation.]  As applicable here, [Evidence Code] section 1521 means only that the [plaintiff] could introduce secondary evidence to establish the contents of bills if (1) the contents themselves were admissible, and (2) the secondary evidence was 'otherwise admissible.'  [Citation.]  Here the contents of the bills were hearsay.  In the absence of a showing that they came within an exception, secondary evidence of their contents was no more admissible than the bills themselves, which is to

11

say, not at all. [¶] . . . If [the summary] is offered to prove the actual values on which a party's damages calculation rests, the summary is hearsay and must, on proper objection, be brought within an exception or excluded from evidence. Since the [plaintiff] failed to do this here, [the defendant's] hearsay objection should have been sustained." (*Parajo Valley Water Management Agency v. McGrath, supra,* 128 Cal.App.4th at pp. 1107-1108; see also *Prato-Morrison v. Doe* (2002) 103 Cal.App.4th 222, 229-230.)

Here, just as in *Pajaro Valley Water Management Agency v. McGrath*, the documents relied upon by Lang were hearsay for which no foundation was laid. As a result, his record summary was inadmissible.

In the absence of Lang's summary there was no evidence to support the "fact" that there were cessations in work. Because of this, EMWD failed to meet its initial burden of production and the motion should have been denied.

KING                          
J.

12